Good morning, Your Honors. Robert J. Mandel for the appellant, David Michery. I'm going to use 10 minutes of my time. How many plaintiffs are there? There's one plaintiff. Why do we have two lawyers? We're doing the case together, Your Honor, because of the nature of the case. I have to say, it is not common for argument to be divided unilaterally when there's just one party being represented. I'd like to allow it, but I'd suggest in the future, if you want to be careful for that to be permitted, you ought to ask for permission. The Supreme Court will never allow you to divide argument like this, and we don't do it very often. Our apologies, Your Honor. Mr. Sullivan came from Kansas City, Missouri, and I wanted to give him an opportunity to be heard before the court. He was going to take the rebuttal argument, and I was going to do the main argument, but if it pleases the court, we won't do it that way. Go ahead. We believe, in essence, Your Honors, that the lower court fashioned a broader rule out of the Triton case than was ever stated in that case or ever intended in that case, and that this broader rule that says Triton prevents the court from relying on the testimony of an expert witness who did not have access to the allegedly defective product collides with California law. As stated in the cases that we've outlined, not to mention the Supreme Court case of Campbell. Well, aren't we bound by Triton? Well, I believe the Ninth Circuit is bound by its precedent, but there's nothing in Triton that says what the district court says in its ruling. The Triton court was looking at a particular photograph under a particular set of circumstances and saying, this photograph under these circumstances is insufficient to go to the jury. Was Triton looking at a manufacturing defect or a design defect? I think that was part of the problem is that they really didn't know, and I think they were trying to suggest it was a manufacturing defect and they were going to go back 20 years, and they were going to base that solely on this photograph, and they had no idea what the history of that breaker was in the intervening 20 years, unlike our vehicle, which we know from testimony was perfectly maintained over its eight years. Is it correct that you were only making it, or on appeal were only looking at a design defect argument? Is that correct? I think we can make a manufacturing defect argument based on the evidence that we have. What argument have you made, not what you can make, but what did you present to us? I think we have presented both, Your Honor. I confess I haven't found references to a manufacturing defect claim. What can you point me to? At this time, I don't remember the exact nature. Argument made to plaintiff submitted sufficient evidence to support a claim of defect under the risk-benefit test. That's a design-type claim, isn't it? Well, we're also saying that it does not meet the consumer expectations test. That's also a design defect claim. So you made both before the district court, but on appeal, I only saw arguments for the design defect claim as well. Well, the case is before you, DeNovo, so we would ask you to look at both. Well, we don't look at something you haven't briefed, and if you haven't briefed the manufacturing defect claim, I'm not sure why we should look at it. We don't do your job. We appreciate that, and if we didn't brief that properly, then we will submit it as it is. So even if we agreed with you that Triton was limited to manufacturing defects, which is one interpretation of that case, how did you provide enough evidence to create a genuine issue of material fact even under the design defect test? Thank you. First off, we don't claim that Triton is limited to manufacturing defects. We're just claiming that Triton is limited to the facts that it was looking at under those circumstances. But wasn't Triton, Nevada, substantive law, and this is California substantive law? That is true. All right, but I think back to what Judge Akuta is saying, what evidence have you set forth regarding the car's design? For example, what evidence is there in the record regarding the state of the interior of the expedition or any expedition after a comparable collision? You have to put some evidence in. What evidence did you put in to show a triable issue? Principally, we have the CHP photos, which show the path of this vehicle in the accident, the tree strike, how it continued in a straight line, and therefore the tree strike was not enough to stop the forward motion of the car. We have the crumpling of the car. We have the side rails bent. We have the interior being pushed in. All of that evidence was before the district court, including the observations of the paramedics, which confirmed that the interior had collapsed and the exterior had collapsed. So we have numerous photos. We have crash test video that show it's not supposed to do that. Crash test video of what vehicle? Of both the Ford F-150 and the expedition. Is that in the record or was that just part of Dr. Khadilakar's opinion? It's part of his opinion. I believe at least one of those videos was submitted to the court. There was a video of a car that wasn't involved, but I understand his opinion was based on videos of cars that were of the same make and model. Right. And you have his opinion. Right. And then, of course, we have his expert opinion, and he's been a crash test engineer for some 40 years working for NHTSA. I'm mystified as to what his opinion with regard to a design defect had been because I didn't see anything there that suggested it was. We know he didn't look at this vehicle. I don't see anything that suggested he looked at any other 1999 Ford expedition. I believe he looked at the crash test video for that. And where does he talk about that? In his declaration, Your Honor. Well, okay. Where does he talk about that? And I have to add, this is more editorial, one of the things I found difficult here is that it seems to me you're submitting to the court or purporting to submit to us lots of stuff that wasn't before the district court. So we have to weed that out because that's not properly part of the record, is it? We did make a motion to augment the record. Well, you don't get to do a do over here. Summary judgment is going to be based on what was before the district court. And not only was there a motion to supplement the record, it's my sense that some of the things you've attached to the excerpts of the record weren't before the district court either. So when you give me a record reference, I hope it's the something that was before the district court. Well, I know the entirety of Dr. Kadilkar's declaration was before the court, Your Honor. And that is briefed for the court beginning on page 20 of our brief and continuing through most of 22. Getting back to Judge Clifton's question, can you point us to language in the declaration which says that he looked at the vehicle? I have to confess I don't remember that. He looked at a crash test. He didn't actually look at vehicles of the same make and model. I believe he said that he was well familiar with this make and model of the Ford Expedition. But I must confess I don't have his declaration in hand. Maybe my co-counsel has that and can enlighten the court on the rebuttal. But, yeah, I don't have that exact paragraph. I do apologize. But I think he's going to pull that up. All right. Thank you. But that is the essence of the evidence that was presented to the district court. And I think the point is that this is distinguishable on its facts from Triton. How do you distinguish Soel versus General Motors? My understanding is that in Soel, the court did leave the door open for the use of the consumer expectations test in a crashworthiness situation. In fact said, the ordinary consumer's expectations are not irrelevant simply because expert testimony is required to prove that the product failed. I thought in Soel they said it wasn't applicable because it was complex. It was a slanting oblique blow to the vehicle at 30 miles per hour. So, therefore, the consumer expectation test wasn't applicable. It required analysis of obscure components under complex circumstances. Correct. So, this case seems analogous in that it was an oblique blow at higher speeds, 30 plus miles. But the argument was that the A-pillar and front end collapsed, which also appear to be obscure components. At least I don't know what the A-pillar is. If I may address that. In Soel, we had a tire or a wheel that detached and they had no idea why this thing detached. And it went underneath the vehicle and smashed the underneath of the vehicle. It was a much more unusual accident. And if the court recalls, we briefed the panel on the Romine case, which says that a rear-end collision. This wasn't a rear-end collision, though, correct? That's true, but this is a front-end collision. But it was like a side and the issue was intrusion into the driver's compartment. It was the same thing in Romine. I thought that was a rear-end and the seat went back. I'm sorry? I thought the seat went back. The seat went back, but it was the collapsing of the frame of the vehicle that caused it to do that. And that's what we're saying happened here. For every rear-end collision, there must indeed be a front-end collision. This is not some unusual circumstance. This is the corner of a bumper hitting an object. And an entire car collapsing because of that at a relatively low speed. So that is a much different circumstance than a wheel inexplicably coming off the car and doing some damage to the undercarriage. As a consumer, I'd be real surprised if a wheel just came off a car. I can't say that I'm real surprised that a car crumples up if it hits at 30-plus miles per hour an object that doesn't move, a tree. So I'm not sure I understand why I should decide this case is such that, based on what you've told me, there's a violation. Because, Your Honor, reasonable people can disagree on that fact, and it's for the trier of fact, and that is our point. I would reserve the rest of the time for rebuttal, if it pleases the Court. Thank you. Good morning. May it please the Court. Katie Richardson on behalf of Ford Motor Company. Your Honors, as the Court has pointed out, with plaintiffs having waived any challenge to all but one of the District Court summary judgment rulings, this Court need only decide whether the District Court properly granted summary judgment of plaintiff's design defect claim in Ford's favor. I have a little bit of a problem, I have to admit, with the reading of Triton that's done by the District Court, in that it can't, just in my mind, it can't be the rule, because you can't examine the original vehicle, that you can never make these allegations. It can't be that, Triton can't stand for that proposition, because by the nature of, a car could blow up. And so then you're going to say that, oh, it blew up, and you couldn't look at the actual car, and so we're not liable. So if you take it to the extreme, that can't be the rule. And I agree, Your Honor, that Triton doesn't go so far as to create a bright-light rule and say whenever there's not a vehicle present, that one can't make out a claim for design defect, and that's not the argument that Ford is advancing here. However, Triton acknowledges that the Court can consider both direct and circumstantial evidence, which is what California law consistently says. Exactly, and that's why I'm here, why I'm wondering in terms of, you've got Vichery's photographs, the witness statements of the accident, the CHP and the first responders report, testimony from the expedition's owner, a crash test video showing a Ford F-150, and a printout from the National Traffic Safety Administration showing four 1999 Ford Exposition crash tests, concluding that none of them raise, how can we say that none of the, all of that together doesn't raise a tribal issue that there's a design defect caused by Vichery's injuries? Yeah, at least under the risk-benefit test, if not the consumer expectation test. I appreciate the question. I'm going to break those down a little bit because some of the evidence you identified is not part of the record, and as you are aware, plaintiff has opposed both, I'm sorry, Ford has opposed both the motion to supplement and pointed out evidence. So the answer is that, in short, that a plaintiff is required to prove both defect and causation, two essential elements of a claim for design defect. When we're looking at the police photographs, the police photographs, while they depict some damage to the vehicle, and I would not disagree that there's some significant damage here, there's only three police photographs that actually depict the interior of the driver compartment, which is the area that plaintiff challenges or targets in his complaint. One of those photographs is obscured by a shadow of the police officer. Another is, despite its poor image quality, obscured by the vehicle's floor mat, and there's no way to discern from those photographs. Certainly Triton supports it. A case, California case, Stephen v. Ford Motor Company, which relies on Triton, supports the fact that photographs, amateur photographs taken, do not support or are insufficient to create a genuine trial of a material fact as to defect. When we look at the medical records and the witness statements and the police report itself, there is nothing in those documents concerning defect. The medical... should have, if properly constructed, and that it caused Micherie's injuries. So that was the expert's testimony. Why isn't that enough to create a genuine issue? Well, the basis on which Dr. Dielkar, and I'm not sure if I'm pronouncing his name correctly, arrived at that conclusion was based on these other materials that I'm referring to, none of which... So he's an expert, and he says those photos are enough for me to determine that the crushing was excessive. So would we say that's wrong as a matter of law? An expert couldn't possibly determine that from the photos? Certainly from the cases cited. Triton, which also cited a Fifth Circuit case, Brown v. Parker, a California court of appeal case, Stephen v. Ford Motor Company, all of which say that photographs, amateur photographs, in order to support an expert's opinion of defect are speculative. Now, plaintiff's counsel points to the case of Pagetto v. Owen, where a defendant's expert was allowed to rely on photographs at trial in support of his opinion. But the defendant's expert in that case actually inspected the police motorcycle at issue and the component part before testifying, and the court of appeal noted that in allowing or affirming the trial court's decision to allow the defendant's experts to testify as to those photographs was based on the fact that his testimony was consistent with his opinions based on his actual inspection of the police motorcycle. He can't be faulted for not inspecting this vehicle, right? I mean, it doesn't belong to the plaintiff. It got crumpled, and the owner of the vehicle sold it for scrap, and it got destroyed. So we're not talking at a situation where someone's just, you know, a spoliation situation or anything like that. Correct. But there's nothing to suggest Dr. Khadilkar did any sort of comparative analysis. I want to point out specifically with respect to these crash tests and a list of testing concerning the expedition, while the crash test video is in the record, it is, as Judge Clifton pointed out, of a completely different vehicle with a different body and structural design. Contrary to Dr. Khadilkar's declaration where he states various components of the vehicle, structural components that are similar, there is no B-pillar on the Ford F-150 that is shown in that video, whereas there is, and the B-pillar, Judge Ikuda is... It's an A-pillar. I don't know either. Right, so in a vehicle, the A-pillar is sort of the structural rod. All the pillars hold up the roof. And the A-pillar is what's right at the front by the windshield and the front of the roof. B-pillar falls behind the driver's door. And then you have a C-pillar and sometimes a D-pillar, depending on how many rows of the vehicle. But they're all the pillars that hold up the roof of the vehicle. And so this is a completely different scenario. And for Dr. Khadilkar to say that the expedition in this case and the F-150 shown in the video, apart from being completely different vehicles, share these structural components is inaccurate. But is that a tribal issue? I mean, doesn't he get some sort of... I mean, they get some... When you rule against someone on a motion to dismiss or a summary judgment, they get certain inferences in their favor. So isn't that something to fight out at trial, whether having the A and the B? It's not exactly the same. But if it shares some components, isn't that enough to get them passed? I don't think so, Your Honor. Here we have simply two completely different vehicles. And there's no basis for Dr. Khadilkar's opinions to say that there are components that are the same and responded the same when there are other factors at issue that neither party can evaluate because the vehicle no longer exists. And the list of crash tests that plaintiff's counsel referred to that do address the expedition are not part of the record. But he does say that he's looked at them and that was part of the basis of his expert opinion. He says he looked at them, Your Honor, but that's all he says. He doesn't state how the list of crash tests bears on his opinions or how they demonstrate... It's a website. I can go look at them, right? Can go look at what? I can go look at the ones that the experts said he referred to. So why isn't that something? It's out in the public domain, right? The list is contained even as Exhibit 2 to plaintiff's motion to supplement the record, but I'm not aware that you can actually visibly see these crash tests. They are just a simple list of what he reviewed, apparently, in support of his decision. I'm sorry? I think you can. Well, I know that the one video that was submitted is a video that's available on YouTube. I don't know that every single crash test video... I think the others are available. Okay. But with respect also to the medical records and the police report, Your Honor, even the police report concludes that plaintiff caused the accident by engaging in an unsafe turning movement. And the deposition and witness statements from Anissa and April are not... That's a different conclusion as opposed to... I mean, because what the plaintiff claimed is that someone, you know, pushed him off the road. So the police officer isn't making a determination of any design defect or whatever. The police officer, you know, any... That adjudication is saying that another vehicle didn't push him off the road, that it was his... You could still make an unsafe turning maneuver but have a defective design in your car. I don't disagree with the point that you're making, but what I'm saying is that the fact that the police report concludes that plaintiff caused the accident, there's no evidence as to a defect in the design. It's not sufficient evidence to create... Well, but they don't ever do that in a police report. Pardon? That's pushing... They don't do that in a police report. They were... What the plaintiff said was that another car rushed me, you know, caused me to take evasive action. But there was another witness, apparently, that the police interviewed that said there was no other car. And so the police officer's conclusion was essentially that he wasn't run off the road and it was driver error that caused him to hit that. But I see that as... Police reports don't make any determination of design. Yeah, I'm not sure I understand because he's not arguing that the design defect caused the accident. He's saying that due to the design defect, the accident caused excessive crushing of the vehicle and caused his injuries. So we're just focusing on the design defect, not on the cause of the accident. Right, Your Honor, and I'm sorry if I was confusing. My point was simply to say that the evidence that Dr. Khadil Carr relied on, including the police report and the photographs and the statements and medical records of plaintiffs, do not create a triable issue of fact as to design defect. Well, the question is if a car is going at 30 miles an hour and turns into a tree, is the amount of crushing that Dr. Khadil Carr said he could discern from the photos evidence of a design defect or not? And he says it is because the crushing of the vehicle was excessive. That's his expert opinion. So the question is, why is that not enough to create a genuine issue of material fact as to whether there was a design defect? As plaintiff's counsel pointed out and is in plaintiff's opening brief, Dr. Khadil Carr, in reaching that opinion, relied principally on the photographs. And the photographs are not enough in and of themselves to create a genuine dispute of material fact that the vehicle was defective. This case, Seoul, the California Supreme Court case of Seoul, is instructive and factually analogous to this case. That was a consumer expectation case, right? Not a risk-benefit case. Well, the court held that the consumer expectation test was improper to apply in that case to establish any defect, and that notably the court stated that an ordinary consumer cannot reasonably expect that a car's frame, suspension, or interior will react the same. But Jakun's question is that that was a consumer expectation case, not a risk-benefit. I'm sorry, yes, it did hold that the consumer expectations test was not the appropriate test to apply. And so your question is, how do the photographs not create a triable issue of fact under the risk-benefit? I'm sorry, perhaps I'm missing something. Seoul doesn't detract from the question whether there's a genuine issue of material fact here, because the question is not, is there a res ipsa loquitur? Would a consumer say, if this happens, there must be a defect? That was Seoul. In this case, as I understand the argument, or at least one of the arguments is, as a matter of whether the car is designed safely enough, risks versus benefits, and the cost, was it designed safely enough just as a matter of appropriate manufacturing, I guess. So it's taking out the consumer expectation test. And he says, no, it wasn't, because cars that are appropriately designed don't crush this way. That was his expert opinion. Well, and again, Your Honor, there is no evidence in the record that Dr. Cadillacar did any comparative analysis of vehicles that purportedly, an expedition in particular, that was designed in his mind properly to compare to. We just have to look at Ford expeditions for that, right? I mean, he's relying on his 40 years of experience, whatever. He's saying it's a design defect. To the extent it's a design defect, it means that all Ford expeditions are improperly designed. That's how I understand a design defect as opposed to a manufacturing defect. Correct. That's the distinction in terms of production versus the design of the vehicle itself. But I guess my point that I'm trying to make is these cases that we've cited, Triton and Brown and Steven and others, say that reliance on photographs, which is the crux of what Dr. Cadillacar relies on in forming his opinions, are insufficient to create a triable issue because they're mere speculation. There's no way to determine that there's not some other basis for the cause of the accident, like plaintiffs driving, the speed of the vehicle. There's no way to determine merely from the damage caused to the vehicle that that in and of itself is a design defect. And that's what Triton, which does, Your Honor, address a design defect. It's not merely a manufacturing defect. There was a design defect claim in that case is why Triton is on point here and should be followed by this court.  Thank you. Thank you. All right. May it please the Court, my name is Rob Sullivan. I'm going to try to address some of the Court's questions, and specifically, Your Honor, you were asking about the declaration of Dr. Cadillacar. In paragraphs 12, 13, and 14 of his declaration, I think he answers some of that. He makes reference to seeing four crash tests conducted on 1999 Ford Expedition vehicles. But the rest of the declaration never mentions that. His conclusions all appear to be drawn from crash tests he witnessed or videos of F-150s. I can't figure out how his opinion is based on anything to do with the Ford Expedition other than the photographs of the vehicle involved in this accident. And, Your Honor, what I'll point out, obviously, they're not listed out here extensively, but in paragraph 12, one of the things that he reviews is the discovery responses and documents produced by Ford, which were literally numbered in the thousands, if not tens of thousands, in the case. But his opinion, what's it founded on? It's odd to me that the only explicit references he makes are to crash test videos of a different kind of vehicle and to photographs of this particular crash. There are hundreds, thousands, maybe hundreds of thousands of Ford Expeditions on the road. Still got to be some left from 1999. He doesn't talk about ever inspecting another Ford Expedition. And his opinion is kind of a bottom line without much explanation, but none of the explanation references a Ford Expedition other than these photographs of this case. And I don't see much. I've looked at the photographs a lot. I don't see much there. So what's his opinion based on? Well, I think his opinion is based on what's listed, extensive photographs, and the photographs have been called amateurish or amateur. They're not amateur photographs. They're taken by the highway patrol. Show me what photograph tells the story or gives him a basis to offer up the opinions he's offered. Well, Your Honor, essentially it comes down to if you assume that this is a 30-mile-an-hour crash and a glancing blow to a tree, right, where the vehicle continues some 50 to 100 feet down the road after it hits the tree. So it's not a 30-mile-an-hour impact with the tree, which is why you need expert testimony. If it were a 30-mile-an-hour impact with the tree, it would have stopped there at the tree. But it's less than that because it continues on. Actually, not unless it's head-on. If it hits the side and you look at the photos, it's obvious it principally hit the side. It's not going to stop dead. It's got momentum. It's going to keep going. No, what I'm saying is to call it a 30-mile-an-hour impact, that means a vehicle hits something and doesn't go any further. When a vehicle goes further, that impact is less than 30 miles an hour effectively. It's an engineering issue, which is why expert testimony is required for that. But when you have a crash like this and see damage like that, he as an expert having crash-test vehicles can say that that is excessive damage. It's not meant to do that. It never should do that. It has to be defectively designed. He said he looked at four Ford Expedition crash-test videos. Did he report that? And this happens in Ford Expeditions. There must be a design problem there. Did he say that? No, he didn't. I don't believe he did say that in the declaration. So that doesn't provide a basis for an opinion. What's this opinion based on? The opinion is based essentially on the facts of the incident is what I'd say, Your Honor. Don't start something new. You're over time. So if you have something specifically you need to tell us, please. Oh, I'm on the red. I'm sorry. I'm sorry, Your Honor. All right. Thank you. Thank you. The case just argued is submitted. We thank all three counsel for your helpful arguments.
judges: Clifton, Callahan, Ikuta